IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY DONACHY and BRUCE KINLEY, on behalf of themselves and others similarly situated,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES OF MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION,<br>　　　　　Defendants | ) Docket No. 04-245E<br>) (Judge Sean J. McLaughlin)<br>)<br>) ELECTRONICALLY FILED PLEADING<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) MEMORANDUM IN SUPPORT OF<br>) DEFENDANTS' MOTION FOR SUMMARY<br>) JUDGMENT<br>)<br>) Filed on behalf of: Defendants<br>)<br>) Counsel of record for this party:<br>) Richard A. Lanzillo, Esq.<br>) Knox McLaughlin Gornall<br>) & Sennett, P.C.<br>) 120 West 10th Street<br>) Erie, PA 16501<br>) Telephone (814) 459-2800<br>) Facsimile (814) 453-4530<br>) Email rlanzillo@kmgslaw.com<br>　PA53811 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.   **INTRODUCTION**

Plaintiffs, Larry Donachy and Bruce Kinley, are former employees of defendant Motion Control Industries ("Motion Control"). Plaintiffs' active employment with Motion Control ended on January 11, 2002, when Motion Control closed its facility in Ridgway, Pennsylvania, and permanently laid-off all employees, including plaintiffs.[1] Prior to the

---

[1] Although their active employment terminated on January 11, 2002, Motion Control continued to pay the wages and benefits of the plaintiffs and other terminated hourly employees through March 16, 2002.

termination of their employment, plaintiffs were participants in an employer-sponsored retirement plan known as the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan").

Although plaintiffs' employment terminated several years before their normal retirement age, they commenced this action to obtain a declaration concerning their future benefits under the Plan. Plaintiffs contend that they will be entitled to "normal retirement" benefits calculated based upon the service "multiplier" in effect when each turns age sixty-five (65) rather than the multiplier in effect when their employment terminated, as determined by the plan administrator. Plaintiffs' proposed interpretation of the Plan is contrary to its clear and unambiguous terms. An employee whose "vesting service" terminates prior to age 65 is not eligible to receive normal retirement benefits, but may be eligible to receive "deferred vested retirement" benefits. Further, where a participant's vesting service terminates prior to age 65, the Plan expressly provides for use of the service multiplier in effect on the date of the employee's separation from employment. Moreover, plaintiffs cannot demonstrate that the Plan administrator's interpretation of the Plan is arbitrary and capricious, which is the standard they must satisfy in order to prevail on the merits of their claim.

## II.     MATERIAL FACTS

### a.     Background

Motion Control employed plaintiff Donachy at its manufacturing facility in Ridgway, Pennsylvania, from September 1997 until January 11, 2002, when it closed the Ridgway facility and permanently laid off its employees. Although Donachy's active employment ceased on January 11, 2002, Motion Control continued Donachy's wages and benefits as well as those of the other eligible employees of the Ridgway facility through

March 16, 2002. Kinley was also employed at its Ridgway facility for a number of years until January 11, 2002, and Motion Control similarly continued his wages and benefits through March 16, 2002.

As of the closure of the Ridgway Facility, neither Donachy nor Kinley had reached age 65, the normal retirement age specified by the Plan document. According to the Complaint, Donachy was 49 years old as of the closure of the Ridgway Facility and will not be 65 years old until October 5, 2017. (Complaint ¶9). The Complaint does not specify the date upon which Kinley will reach 65 years of age. However, the Complaint acknowledges that Kinley had not reached age 65 as of the date of the termination of his employment. (Complaint ¶10).

    b.    **The Plan Documents**

The Plan is comprised of two documents. Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").[2] The "Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the "Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion Control "Participating Group."[3] (See Exhibit A, pp. 2-3, §1.3 and Exhibit B, p.2, ¶(u), which describe the constituent parts of the Plan).

The Plan describes "the benefits for Members who are in the employment of [Motion Control] in the Participating Group on and after July 20, 2000 and who retire <u>or whose Vesting Service terminates on or after July 20, 2000</u>." The Plan's distinction between Members

---

[2] Motion Control was operated as a division of Carlisle Corporation.

[3] The Carlisle Plan Document and the Supplement are attached to Defendants' Motion for Summary Judgment, respectively, as Exhibit A and Exhibit B.

"who retire" on or after July 20, 2000 and those "whose Vesting Service terminates on or after July 20, 2000" is the crux of the issue presented by this case. To fully understand this distinction and the Plan's treatment of each class of members, a summary of the Plan's principal terms and structure is necessary.

### c.    Normal Retirement Benefits vs. Deferred Vested Retirement Benefits

The Plan provides for various types of retirement benefits, including (1) Normal Retirement Benefits, and (2) Deferred Vested Retirement Benefits.[4] A participant "whose Vesting Service terminates on or after his Normal Retirement Age shall be eligible to receive a normal retirement benefit under the Plan in accordance with and subject to the provisions of the Plan." (Exhibit A, p.16, §4.1(a)). As this language makes clear, "normal retirement" is available only where the participant's "Vesting Service terminates on or after his Normal Retirement Age." Under the Plan, a member reaches "Normal Retirement Age" on his sixty-fifth birthday. (Exhibit B, p.3, ¶(j)(1)). Thus, Normal Retirement under the Plan conforms to commonly held notions of normal retirement – i.e., a vested participant is eligible for Normal Retirement Benefits when he *remains employed* at least until his sixty-fifth birthday. This definition cannot apply to plaintiffs in this case because their Vesting Service terminated *before* either reached his Normal Retirement Age (i.e., age sixty-five). (Complaint ¶¶9-10). An employee's Vesting Service necessarily terminates when his employment is terminated. (Exhibit A, p.12, §3.5).

In contrast to Normal Retirement Benefits, Deferred Vested Retirement Benefits are available to a participant "whose Vesting Services terminates after he attains his Vested

---

[4]    The Plan also provides for "Early Retirement Benefits" and "Disability Retirement Benefits." However, neither of these types of benefits is raised as an issue by plaintiffs' complaint. A participant who has five or more years of "Vesting Service" and attains age fifty (50) may elect to take an Early Retirement Benefit. (Exhibit B, p.3, ¶(j)(2)).

Retirement Age and before his Early Retirement Age," provided he satisfies the other requirements of the Plan.[5] (Exhibit A, p.18, §4.4 (a)). Speaking directly to the issue raised by plaintiffs in their complaint, §4.4(b) of the Carlisle Plan Document unambiguously states that the amount of a terminated Member's monthly deferred vested retirement benefit shall be calculated "based on the benefit rate and his Credited Service as of the date his Vesting Service terminates." (Exhibit A, p.18, §4.4(b)). Monthly deferred vested retirement benefit payments begin on the first day of the month coincident with or next following the member's sixty-fifth birthday unless the member defers such payments in accordance with the terms of the Plan. (Exhibit A, p.18, §4.4 (c)).

Thus, the foregoing provisions establish the following eligibility rules under the Plan:

(1) A participant is entitled to receive Normal Retirement Benefits only if his Vesting Service terminates on or after the date he reaches Normal Retirement Age (age 65).

(2) A participant whose vesting service terminates before he reaches Normal Retirement Age is not entitled to receive Normal Retirement Benefits, but may be entitled to Deferred Vested Retirement Benefits, provided he satisfies the vesting requirements of the Plan.

(3) Deferred Vested Retirement Benefits are calculated "based on the benefit rate and [the Member's] Credited Service *as of the date his Vesting Service terminates*;" however, Deferred Vested Retirement benefit payments typically do not begin until the member reaches age 65.

---

[5] Under the Plan, Vested Retirement Age is attained when the member has "five years of Vesting Service and has not attained age 50." (Exhibit B, p.3, ¶(j)(4)). A member reaches Early Retirement Age when he attains "[a]ge 50 (but not age 65) and five or more years of Vesting Service." (Exhibit B, p.3, ¶(j)(2)).

### d. Plan Provisions Dictating the Applicable Credited Service "Multiplier"

Calculation of retirement benefits requires the determination of two factors: (1) a Member's years of "Credited Service," and (2) the applicable "benefit rate" or "multiplier." The calculation of Normal Retirement Benefits is prescribed by §4.1(b) of the Carlisle Plan Document, which states in relevant part:

> **Amount.** The monthly amount of normal retirement benefit payable to a Member eligible therefor under (a) above shall be equal to the Member's Credited Service multiplied by the benefit rate specified in the Supplement…

(Exhibit A, p.16, §4.1(b)).

In contrast, §4.4(b) of the Carlisle Plan Document describes the method for calculating Deferred Vested Retirement Benefits and provides in relevant part as follows:

> **Amount.** A terminated Member's monthly deferred vested retirement benefit shall be an amount computed in the same manner as a normal retirement benefit, determined as set forth in section 4.1(b) above, <u>based on the benefit rate and his Credited Service as of the date of his Vesting Service terminates</u>…

(Exhibit A, p.18, §4.4(b)(emphasis supplied)).

Credited Service is determined in accordance with §3.6 of the Carlisle Plan Document (Exhibit A, p.13, §3.6) and Paragraph (h) of the Part II Supplement (Exhibit B, p.2, ¶(h)). In the case of a Member eligible for a "Normal Retirement Benefit Under Section 4.1(b) of the Plan," the participant's years of Credited Service are multiplied by the dollar amount specified in Paragraph (l) of the Part II Supplement, which states:

**Amount of Normal Retirement Benefit Under Section 4.1 (b) of the Plan:** The monthly amount of <u>normal retirement benefit payable to a Member eligible therefor under section 4.1(a)</u> of the Plan and whose Vesting Service terminates on or after July 20, 2000 shall be equal to the product of the amount shown in the chart below, depending upon the date of the Member's retirement, multiplied by the total period of the Member's Credited Service. The chart is as follows:

| Date of Retirement | Monthly Retirement Benefit Per Year of Credited Service |
|---|---|
| July 20, 2000 through June 30, 2001 | Twenty-nine dollars ($29.00) |
| July 20, 2001 through June 30, 2002 | Thirty dollars ($30.00) |
| On or after July 20, 2002 | Thirty-one dollars ($31.00)[6] |

(Exhibit B, p.3, ¶(l)(emphasis supplied)).

In this action for declaratory judgment, plaintiffs contend that when they reach retirement age they should be entitled to the $31.00 multiplier specified for participants who are eligible for a Normal Retirement Benefit and retire after July 20, 2002. In contrast, the Plan and Motion Control assert that the $30.00 multiplier that was in effect as of the date of the termination of their employment and §4.4(b) [not §4.1(a)] would apply to determine any Deferred Vested Retirement Benefits that plaintiffs may receive in the future.

Plaintiffs' position defies the plain language of the Plan. The reference to "Date of Retirement" in the chart included in Paragraph (l) of the Supplement applies only to calculating the "amount of <u>normal retirement benefit</u> payable to a <u>Member eligible therefor under section 4.1(a)</u> of the Plan." (Exhibit B, p.3, ¶(l)). Because plaintiffs' employment and

---

[6] As plaintiffs note in their Complaint, the Credited Service multiplier is determined through the collective bargaining process.

Vesting Service terminated before they reached Normal Retirement Age, they are not entitled to receive Normal Retirement Benefits, but may be entitled to receive Deferred Vested Retirement Benefits when they reach retirement age. Section 4.4(b) of the Carlisle Plan Document clearly and unambiguously states that the amount of a terminated Member's monthly deferred vested retirement benefit shall be calculated "based on the benefit rate and his Credited Service as of the date his Vesting Service terminates." (Exhibit A, p.18, §4.4(b)).

Plaintiffs' position in this case is also expressly rejected by the concluding clause of Paragraph (l) of the Part II Supplement, which states:

> **Increases in Retirement Benefits.** Notwithstanding the foregoing, if a Member retires on or after July 20, 2000 and before July 1, 2002 with normal, early, or disability benefits commencing during such interval, upon attaining each subsequent July 1 during such interval after his benefit commencement, he shall be entitled to an increased monthly benefit recomputed based on the rate as in effect on each such July 1 as shown in the above chart. Such increases shall not apply to the deferred vested retirement benefits under section 4.4.

(Exhibit B, p.4, ¶(l)(emphasis supplied)). Thus, as Paragraph (l) of the Part II Supplement makes clear, a Member is eligible for the next July 1 increase in the applicable service multiplier only if he "retires" with Normal, Early or Disability benefits during that year, and the Plan specifically excludes recipients of Deferred Vested Retirement Benefits from such increases.

### III. DISCUSSION

   a.   **The Plan must be interpreted according to its clear and unambiguous terms.**

This action is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. ERISA is a comprehensive statute enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and "to protect

contractually defined benefits," <u>Massachusetts Mutual Life Ins. v. Russell</u>, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985); <u>see</u> <u>also</u> 29 U.S.C. §1001. ERISA's framework ensures that employee benefit plans are governed by written documents, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits. <u>See</u> <u>Hozier v. Midwest Fasteners, Inc.</u>, 908 F.2d 1155 (3d Cir.1990); <u>Confer v. Custom Engineering Co.</u>, 952 F.2d 41 (3d Cir.1991); <u>Hamilton v. Air Jamaica, Ltd.</u>, 945 F.2d 74 (3d Cir.1991), <u>cert. denied</u>, 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992); 29 U.S.C. § 1022(a)(1).

Where the plan document is clear and unambiguous, it is to be interpreted according to its plain meaning. <u>Walker v. Wal-Mart, Inc.</u>, 159 F.3d 938, 940-941 (5th Cir. 1998). Moreover, plan provisions are not to be regarded as ambiguous simply because their language is technical in nature. <u>Id.</u>

In the present case, plaintiffs seek a judicial declaration that (1) they will be entitled to receive Normal Retirement Benefits when they reach age 65; and (2) they will be entitled to avail themselves of the benefit multiplier in effect when they reach age 65 rather than the multiplier in effect when their Vesting Service terminated. Plaintiffs' interpretation of the Plan is directly contrary to its terms.

    **b.**    **Under the clear and unambiguous terms of the Plan, plaintiffs will not be entitled to receive Normal Retirement Benefits when they attain age 65.**

Section 4.1(a) of the Carlisle Plan Document makes clear that "normal retirement" benefits are available only where the participant's "Vesting Service terminates on or after his Normal Retirement Age." The Vesting Service of each plaintiff terminated when the Motion Control plant was closed and their employment terminated. Plaintiffs' Complaint acknowledges that neither plaintiff had reached normal retirement age (age 65) when their

Vesting Service terminated. (Complaint ¶¶9-10). Accordingly, under the clear and unambiguous terms of the Plan documents, neither plaintiff will be entitled to receive Normal Retirement Benefits when they reach age 65.

Instead, plaintiffs' prospects for receiving benefits at age 65 plainly rise or fall based on the provisions of the Plan addressing Deferred Vested Retirement Benefits. Such benefits are available to a participant "whose Vesting Services terminates after he attains his Vested Retirement age and before his Early Retirement Age," provided he satisfies the other requirements of the Plan. (Exhibit A, p.18, §4.4 (a)). Typically, monthly deferred vested retirement benefit payments begin when a member reaches his sixty-fifth birthday unless the member defers such payments in accordance with the terms of the Plan. (Exhibit A, p.18, §4.4 (c)). However, the Plan provides different rules for calculating Deferred Vested Retirement Benefits and Normal Retirement Benefits, and these rules unambiguously reject plaintiffs' position concerning the benefit multiplier that would apply to the calculation of their benefits.

    c.    **Under the clear and unambiguous terms of the Plan, Deferred Vested Retirement Benefits are to be calculated based on the multiplier in effect as of the termination of the member's Vesting Service.**

Section 4.4(b) of the Carlisle Plan Document clearly and unambiguously states that the amount of a terminated Member's monthly deferred vested retirement benefit shall be calculated "<u>based on the benefit rate and his Credited Service as of the date his Vesting Service terminates.</u>" (Exhibit A, p.18, §4.4(b)).

"Normal Retirement Benefits under Section 4.1(b) of the Plan," are calculated by multiplying the member's years of Credited Service by the dollar amount specified in Paragraph (l) of the Part II Supplement. (<u>Id.</u>) For members eligible to receive Normal Retirement benefits (i.e. members whose Vesting Service terminates after reaching Normal Retirement Age), the

applicable benefit multiplier is the one in effect on the date of their retirement. (Exhibit B, p.3, ¶(l)).

The Plan is clear, however, that the reference to "Date of Retirement" in the chart included in Paragraph (l) of the Supplement applies only to calculating the "amount of <u>normal retirement benefit</u> payable to a <u>Member eligible therefor under section 4.1(a)</u> of the Plan." In contrast, for a member entitled to receive Deferred Vested Retirement Benefits "the benefit rate" is fixed "as of the date his Vesting Service terminates." (Exhibit A, p.18, §4.4(b)). (Exhibit B, p.3, ¶(l)).

Further, the final clause of Paragraph (l) of the Part II Supplement conclusively repudiates plaintiffs' position and specifically affirms the distinction recognized by defendants in this action. This clause states:

> **Increases in Retirement Benefits.** Notwithstanding the foregoing, if a Member retires on or after July 20, 2000 and before July 1, 2002 with <u>normal, early, or disability</u> benefits commencing during such interval, upon attaining each subsequent July 1 during such interval after his benefit commencement, he shall be entitled to an increased monthly benefit recomputed based on the rate as in effect on each such July 1 as shown in the above chart. <u>Such increases shall not apply to the deferred vested retirement benefits under section 4.4.</u>

(Exhibit B, p.4, ¶(l)(emphasis supplied)). Thus, a Member is eligible for the next July 1 increase in the applicable service multiplier only if he "retires" with Normal, Early or Disability benefits during that year. The Plan specifically excludes recipients of Deferred Vested Retirement Benefits from such increases.

As the foregoing analysis demonstrates, several provisions of the Plan speak to the issue raised by plaintiffs in this case. These provisions uniformly and consistently reject the

positions advocated by plaintiffs concerning entitlement to Normal Retirement Benefits and the appropriate benefit multiplier to be applied to benefits received by a member whose Vesting Service terminates prior to Normal Retirement Age. Under the clear and unambiguous terms of the Plan, (1) plaintiffs are not entitled to receive Normal Retirement Benefits, now or at any time in the future, and (2) to the extent plaintiffs are entitled to receive Deferred Vested Retirement Benefits in the future, such benefits must be calculated according to the $30.00 multiplier in effect when their Vesting Service terminated.

### d. The Committee's interpretation of the Plan is subject to the arbitrary and capricious standard of review.

ERISA does not specify a standard of review applicable to actions brought by a plan participant challenging a denial of benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In determining the appropriate standard of review, the Supreme Court in Firestone rejected the universal application of the arbitrary and capricious standard when reviewing an ERISA administrator's decision regarding benefits eligibility. Id. Rather, applying principles of trust law, the Firestone Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. The Firestone holding was interpreted by the Third Circuit in Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176 (3d Cir.1991). Under Luby, where an administrator is granted discretionary authority to grant or deny benefits, the administrator's factual determinations as well as interpretations of the plan are reviewed under the arbitrary and capricious standard.[7] Id. at 1183-84.

---

[7] The Third Circuit has also held that, where a conflict of interest exists, a heightened standard of review should apply. See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 378 (3d Cir.1998). The Pinto Court addressed the conflict of interest that arises when an insurer both decides claims and pays benefits

In the present case, the Plan vests discretion regarding interpretation of the Plan in a Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is comprised of five members selected in accordance with procedures prescribed by the Plan. (Exhibit A, p.32, §§7.1-7.2). The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary...". (Exhibit A, p.32, §7.3). The powers and duties of the Committee include "the exclusive right, in its discretion, to make any finding of fact necessary or appropriate for any purpose under the Plan, including but not limited to the determination of the eligibility for and the amount of ay benefit payable under the Plan," and "in its discretion, to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision." (Exhibit A, p.32, §7.3)(d), (e)). Thus, the Plan grants to the Committee the broadest possible discretion regarding determinations of benefits and interpretation of the Plan, which discretion triggers the arbitrary and capricious standard of review.

Under the arbitrary and capricious standard, a court must uphold an administrator's interpretation of a plan, even if it disagrees with it, so long as "the administrator's interpretation is rationally related to a valid plan purpose and is not contrary to the plain

---

from its own assets because "the fund from which the monies are paid is the same fund from which the insurance company reaps its profits ..." Id. Therefore, in cases where an insurance company both determines claims and pays benefits from its own assets, the Pinto Court adopted a "sliding scale" method under which less deference applies if the conflict of interest impacted the claim determination. Id. No such conflict of interest exists in this case.

language of the plan." Dewitt v. Penn-Del Directory Co., 106 F.3d 514, 520 (3d Cir.1997). "Simply put, under the arbitrary and capricious standard a court may not disturb a fiduciary's interpretation of the plan so long as it is reasonable." Keating v. Whitmore Mfg. Co., No. 97-4463, 1998 WL 372457, at *1 (E.D.Pa. June 4, 1998). Under the arbitrary and capricious standard, "the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by the evidence or erroneous as a matter of law.'" Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir.1993)(citations omitted).

Application of this standard to the present case is not a difficult exercise. The Plan Committee's interpretation of the Plan is not only reasonable, it is plainly correct under the express and clear terms of the Plan.

## IV.   CONCLUSION

For the reasons discussed above, plaintiffs' claims fail as a matter of law and defendants are entitled to the entry of summary judgment dismissing plaintiffs' complaint and declaring that (1) plaintiffs are not entitled to receive Normal Retirement Benefits, and (2) to the extent plaintiffs are entitled to receive Deferred Vested Retirement Benefits in the future, such benefits must be calculated according to the $30.00 multiplier in effect when their Vesting Service terminated.

-15-

                                                   Respectfully submitted,

                                                   KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

DATE: November 4, 2005             By: /s/ Richard A. Lanzillo
                                                       Richard A. Lanzillo
                                                       PA53811
                                                       120 West Tenth Street
                                                       Erie, PA 16501-1461
                                                       Telephone: (814) 459-2800
                                                       Fax: (814) 453-4530
                                                       Email: rlanzill@kmgslaw.com

                                                       Attorneys for Defendants, Motion Control Industries, Division of Carlisle Corporation, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation

# 641178