IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY DONACHY and BRUCE KINLEY, on behalf of themselves and others similarly situated,<br>    Plaintiffs,<br><br>v.<br><br>MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES OF MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION,<br>    Defendants | Docket No. 04-245E<br>(Judge Sean J. McLaughlin)<br><br>ELECTRONICALLY FILED PLEADING<br><br>JURY TRIAL DEMANDED<br><br>STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Filed on behalf of: Defendants<br><br>Counsel of record for this party:<br>Richard A. Lanzillo, Esq.<br>Knox McLaughlin Gornall & Sennett, P.C.<br>120 West 10th Street<br>Erie, PA 16501<br>Telephone (814) 459-2800<br>Facsimile (814) 453-4530<br>Email rlanzillo@kmgslaw.com<br>PA53811 |

## CONCISE STATEMENT OF MATERIAL FACTS
## IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to L.R. 56.1, defendants, Motion Control Industries, Division of Carlisle Corporation and Retirement Plan for Bargaining for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation, file the following as their Concise Statement of Material Facts in Support of their Motion for Summary Judgment:

**A.     Background**

1.     Plaintiffs, Larry Donachy and Bruce Kinley, are former employees of defendant Motion Control Industries ("Motion Control"). (Complaint ¶¶9-10).

2. Plaintiffs' active employment with Motion Control ended on January 11, 2002, when Motion Control closed its facility in Ridgway, Pennsylvania, and permanently laid-off all employees, including plaintiffs. (Complaint ¶15; Answer ¶¶3, 9-10).

3. Motion Control continued to pay the wages and benefits of the plaintiffs and other terminated hourly employees through March 16, 2002. (Complaint ¶15; Answer ¶15).

4. Prior to the termination of their employment, plaintiffs were participants in an employer-sponsored retirement plan known as the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan"). (Complaint ¶22).

**B.  The Plan Documents**

5. The Plan is comprised principally of the following two documents:

a. Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").

b. The "Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the "Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion Control "Participating Group."

6. A true and correct copy of the Carlisle Plan Document is included in Defendants' Appendix to Motion for Summary Judgment as Exhibit A.

7. A true and correct copy of the Part II Supplement is included in Defendants' Appendix to Motion for Summary Judgment as Exhibit B.

C.  **Normal Retirement Benefits vs. Deferred Vested Retirement Benefits and Plaintiff's ineligibility for Normal Retirement Benefits**

8.  The Plan provides for various types of retirement benefits, including (1) Normal Retirement Benefits, and (2) Deferred Vested Retirement Benefits.[1]

9.  Under the Plan, a participant "whose Vesting Service terminates on or after his Normal Retirement Age shall be eligible to receive a normal retirement benefit under the Plan in accordance with and subject to the provisions of the Plan." (Exhibit A, p.16, §4.1(a)). Therefore, under the Plan, "normal retirement" is available only where the participant's "Vesting Service terminates on or after his Normal Retirement Age."

10. Under the Plan, a member reaches "Normal Retirement Age" on his sixty-fifth birthday. (Exhibit B, p.3, ¶(j)(1)).

11. Neither plaintiff is eligible for Normal Retirement Benefits because the Vesting Service of each terminated *before* either reached his Normal Retirement Age (i.e., age sixty-five). (Complaint ¶¶9-10).

12. An employee's Vesting Service terminates when his employment is terminated. (Exhibit A, p.12, §3.5).

13. As of the closure of the Ridgway Facility and the termination of his employment, neither Donachy nor Kinley had reached age 65, the normal retirement age specified by the Plan Document. (Complaint ¶¶9-10).

---

[1] The Plan also provides for "Early Retirement Benefits" and "Disability Retirement Benefits." However, neither of these types of benefits is raised as an issue by plaintiffs' complaint. A participant who has five or more years of "Vesting Service" and attains age fifty (50) may elect to take an Early Retirement Benefit. (Exhibit B, p.3, ¶(j)(2)).

14.   According to the Complaint, Donachy was 49 years old as of the closure of the Ridgway Facility and will not be 65 years old until October 5, 2017. (Complaint ¶9).

15.   Although the Complaint does not specify the date upon which Kinley will reach 65 years of age, the Complaint acknowledges that Kinley had not reached age 65 as of the date of the termination of his employment. (Complaint ¶10).

16.   Although plaintiffs are not entitled to Normal Retirement Benefits, they may be entitled to Deferred Vested Retirement Benefit in the future, provided they satisfy the vesting requirements and other terms and conditions of the Plan. (Exhibit A, p.18, §4.4 (a)).

17.   Deferred Vested Retirement Benefits are available to a participant "whose Vesting Services terminates after he attains his Vested Retirement age and before his Early Retirement Age," provided he satisfies the other requirements of the Plan. (Exhibit A, p.18, §4.4 (a)).

18.   Under the Plan, Vested Retirement Age is attained when the member has "five years of Vesting Service and has not attained age 50." (Exhibit B, p.3, ¶(j)(4)). A member reaches Early Retirement Age when he attains "[a]ge 50 (but not age 65) and five or more years of Vesting Service." (Exhibit B, p.3, ¶(j)(2)).

D.   **Calculation of Benefits and Determination of the Appropriate Benefit Multiplier**

19.   Section 4.4(b) of the Carlisle Plan Document states that the amount of a terminated Member's monthly deferred vested retirement benefit shall be calculated "<u>based on the benefit rate and his Credited Service as of the date his Vesting Service terminates.</u>" (Exhibit A, p.18, §4.4(b)).

20. Monthly deferred vested retirement benefit payments begin on the first day of the month coincident with or next following the member's sixty-fifth birthday unless the member defers such payments in accordance with the terms of the Plan. (Exhibit A, p.18, §4.4(c)).

21. Calculation of retirement benefits requires determination of two factors: (1) a Member's years of "Credited Service," and (2) the applicable "benefit rate" or "multiplier."

22. The calculation of Normal Retirement Benefits is prescribed by §4.1(b) of the Carlisle Plan Document, which states in relevant part as follows:

> **Amount.** The monthly amount of normal retirement benefit payable to a Member eligible therefor under (a) above shall be equal to the Member's Credited Service multiplied by the benefit rate specified in the Supplement…

(Exhibit A, p.16, §4.1(b)).

23. The calculation of Deferred Vested Retirement Benefits is prescribed by §4.4(b) of the Carlisle Plan Document, which provides in relevant part as follows:

> **Amount.** A terminated Member's monthly deferred vested retirement benefit shall be an amount computed in the same manner as a normal retirement benefit, determined as set forth in section 4.1(b) above, <u>based on the benefit rate and his Credited Service as of the date of his Vesting Service terminates</u>…

(Exhibit A, p.18, §4.4(b)).

24. Credited Service is determined in accordance with §3.6 of the Carlisle Plan Document (Exhibit A, p.13, §3.6) and Paragraph (h) of the Part II Supplement (Exhibit B, p.2, ¶(h)).

25. In the case of a Member eligible for a "Normal Retirement Benefit Under Section 4.1(b) of the Plan," the participant's years of Credited Service are multiplied by the dollar amount specified in Paragraph (l) of the Part II Supplement, which states:

> **Amount of Normal Retirement Benefit Under Section 4.1 (b) of the Plan:** The monthly amount of <u>normal retirement benefit payable to a Member eligible therefor under section 4.1(a)</u> of the Plan and whose Vesting Service terminates on or after July 20, 2000 shall be equal to the product of the amount shown in the chart below, depending upon the date of the Member's retirement, multiplied by the total period of the Member's Credited Service. The chart is as follows:

| Date of Retirement | Monthly Retirement Benefit Per Year of Credited Service |
| --- | --- |
| July 20, 2000 through June 30, 2001 | Twenty-nine dollars ($29.00) |
| July 20, 2001 through June 30, 2002 | Thirty dollars ($30.00) |
| On or after July 20, 2002 | Thirty-one dollars ($31.00) |

(Exhibit B, p.3, ¶(l)(emphasis supplied)).

E. **The benefit multiplier applicable to any Deferred Vested Retirement Benefits that may accrue to plaintiffs is the $30.00 multiplier in effect as of the termination of their Vesting Service.**

26. Plaintiffs contend that when they reach retirement age they should be entitled to the $31.00 multiplier specified for participants who are eligible for a Normal Retirement Benefit and retire after July 20, 2002. In contrast, defendants assert that the $30.00 multiplier that was in effect as of the date of the termination of their employment and Vesting Service would apply to any Deferred Vested Retirement Benefits that plaintiffs may receive in the future.

27. Plaintiffs' position is contrary to the terms of the Plan as the reference to "Date of Retirement" in the chart included in Paragraph (l) of the Supplement applies only to calculating the "amount of <u>normal retirement benefit</u> payable to a <u>Member eligible therefor under section 4.1(a)</u> of the Plan." (Exhibit B, p.3, ¶(l)).

28. Because plaintiffs' employment and Vesting Service terminated before they reached Normal Retirement Age, they are not entitled to receive Normal Retirement Benefits, but may be entitled to receive Deferred Vested Retirement Benefits when they reach retirement age. (Exhibit A, p.18, §4.4 (a)).

29. Section 4.4(b) of the Carlisle Plan Document states that the amount of a terminated Member's monthly Deferred Vested Retirement Benefit shall be calculated "<u>based on the benefit rate and his Credited Service as of the date his Vesting Service terminates.</u>" (Exhibit A, p.18, §4.4(b)(emphasis supplied)).

30. Plaintiffs' position in this case is also expressly rejected by Paragraph (l) of the Part II Supplement, which states:

> **Increases in Retirement Benefits.** Notwithstanding the foregoing, if a Member retires on or after July 20, 2000 and before July 1, 2002 with <u>normal, early, or disability</u> benefits commencing during such interval, upon attaining each subsequent July 1 during such interval after his benefit commencement, he shall be entitled to an increased monthly benefit recomputed based on the rate as in effect on each such July 1 as shown in the above chart. <u>Such increases shall not apply to the deferred vested retirement benefits under section 4.4</u>.

(Exhibit B, p.4, ¶(l)(emphasis supplied).

31. Paragraph (l) of the Part II Supplement makes clear that a member is eligible for the next July 1 increase in the applicable service multiplier only if he "retires" with Normal, Early or Disability benefits during that year, and the Plan specifically excludes recipients of Deferred Vested Retirement Benefits from such increases. (Exhibit B, p.4, ¶(l).

**F.  The Plan grants broad discretion to the Plan Administrator to determine entitlement to benefits and to interpret the Plan.**

32. In the present case, the Plan vests discretion regarding interpretation of the Plan in a Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is comprised of five members selected in accordance with procedures prescribed by the Plan. (Exhibit A, p.32, §§7.1-7.2).

33. The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary…". (Exhibit A, p.32, §7.3).

34. The powers and duties of the Committee include "the exclusive right, in its discretion, to make any finding of fact necessary or appropriate for any purpose under the Plan, including but not limited to the determination of the eligibility for and the amount of ay benefit payable under the Plan," and "in its discretion, to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision." (Exhibit A, p.32, §7.3)(d), (e)).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KNOX McLAUGHLIN GORNALL & SENNETT, P.C. |
| DATE: November 4, 2005 | By: /s/ Richard A. Lanzillo<br>Richard A. Lanzillo<br>PA53811<br>120 West Tenth Street<br>Erie, PA 16501-1461<br>Telephone: (814) 459-2800<br>Fax: (814) 453-4530<br>Email: rlanzill@kmgslaw.com |
|  | Attorneys for Defendants, Motion Control Industries, Division of Carlisle Corporation, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation |
| # 641103 |  |