IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY DONACHY and BRUCE KINLEY, on behalf of themselves and others similarly situated, <br>       Plaintiffs, <br><br> v. <br><br> MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES OF MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, <br>       Defendants | Docket No. 04-245E <br> (Judge Sean J. McLaughlin) <br><br> ELECTRONICALLY FILED PLEADING <br><br> JURY TRIAL DEMANDED <br><br> DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT <br><br> Filed on behalf of: Defendants <br><br> Counsel of record for this party: <br> Richard A. Lanzillo, Esq. <br> Knox McLaughlin Gornall & Sennett, P.C. <br> 120 West 10th Street <br> Erie, PA 16501 <br> Telephone (814) 459-2800 <br> Facsimile (814) 453-4530 <br> Email rlanzillo@kmgslaw.com <br> PA53811 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

In their Complaint, plaintiffs, Larry Donachy and Bruce Kinley, each requested a judicial declaration that, upon attaining age 65, "he will be eligible for a Normal Retirement benefit" under the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan") and that such benefit should be calculated according to the benefit "multiplier" in effect on his sixty-fifth birthday. (Complaint ¶¶9, 10). On November 4, 2005, defendants filed their motion for summary judgment asserting the legal insufficiency of plaintiffs' claim based on

the clear and unambiguous language of the Plan that precludes eligibility for Normal Retirement benefits where, as in this case, the participants' "vesting service" terminates before they attain age 65.

In response to defendants' motion, plaintiffs have filed a cross-motion for summary judgment which abandons their demand for a declaration of entitlement to Normal Retirement benefits, and now requests a declaration that they will be entitled to a Deferred Vested Retirement benefit at age 65 calculated according to the $31.00 service multiplier that went into effect on July 20, 2002. . Plaintiffs attempt to reach the $31.00 multiplier by advancing interpretations of various plan provisions that they contend extend their vesting service beyond the July 20, 2002 threshold. This claim and the issues of plan interpretation and assertions of fact upon which it is based were never submitted to the Plan for consideration. Plaintiffs' new claim is therefore barred by plaintiffs' failure to exhaust their administrative remedies. Moreover, like the interpretation claim for Normal Retirement benefits asserted in their Complaint, plaintiffs' recently proposed interpretation of the Plan is contrary to its clear and unambiguous terms.

## II.     MATERIAL FACTS

### a.     Background

Motion Control employed plaintiff Donachy at its manufacturing facility in Ridgway, Pennsylvania, from September 1997 until January 11, 2002, when it closed the Ridgway facility and permanently laid off its employees. Although Donachy's active employment ceased on January 11, 2002, Motion Control continued Donachy's wages and benefits as well as those of the other eligible employees of the Ridgway facility through March 16, 2002. Kinley was also employed at its Ridgway facility for a number of years until

January 11, 2002, and Motion Control similarly continued his wages and benefits through March 16, 2002.

As of the closure of the Ridgway Facility, neither Donachy nor Kinley had reached age 65, the normal retirement age specified by the Plan document. According to the Complaint, Donachy was 49 years old as of the closure of the Ridgway Facility and will not be 65 years old until October 5, 2017. (Complaint ¶9). Neither Kinley's affidavit nor the Complaint specifies the date upon which Kinley will reach 65 years of age. However, the Complaint acknowledges that Kinley had not reached age 65 as of the date of the termination of his employment. (Complaint ¶10).

Prior to the filing of their cross-motion for summary judgment, plaintiffs never submitted a claim to the Plan or Motion Control asserting a right to Deferred Vested Retirement benefits. As a result, the Plan administrator has not reviewed any such claim or made any determination concerning whether either plaintiff has satisfied the vesting and other eligibility requirements for such benefits and, if determined to be eligible, the benefit level or amount each plaintiff would be entitled to receive under the Plan. Nevertheless, based upon the plain language of the Plan, it is clear that, in the event plaintiffs are eligible to receive Deferred Vested Retirement benefits, neither is entitled to benefits at the $31.00 multiplier level.

b.   **The Plan Documents**

The Plan is comprised of two documents. Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").[1] The "Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the

---

[1]   Motion Control was operated as a division of Carlisle Corporation.

"Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion Control "Participating Group."[2]  (See Exhibit A, pp. 2-3, §1.3 and Exhibit B, p.2, ¶(u), which describe the constituent parts of the Plan).

### c.     Normal Retirement Benefits vs. Deferred Vested Retirement Benefits

The Plan provides for various types of retirement benefits, including (1) Normal Retirement Benefits, and (2) Deferred Vested Retirement Benefits.[3]  A participant "whose Vesting Service terminates on or after his Normal Retirement Age shall be eligible to receive a normal retirement benefit under the Plan in accordance with and subject to the provisions of the Plan." (Exhibit A, p.16, §4.1(a)).  Under the Plan, a member reaches "Normal Retirement Age" on his sixty-fifth birthday.  (Exhibit B, p.3, ¶(j)(1)).  Based upon the new position asserted in their motion, plaintiffs apparently have come to recognize that this language precludes their claim for Normal Retirement benefits because the vesting service of each plaintiff terminated before he reached Normal Retirement Age.  (See Complaint ¶¶9-10).

In contrast to Normal Retirement Benefits, Deferred Vested Retirement Benefits are available to a participant "whose Vesting Services terminates after he attains his Vested Retirement Age and before his Early Retirement Age," provided he satisfies the other requirements of the Plan.[4]  (Exhibit A, p.18, §4.4 (a)).  In the present case, the record is silent concerning the ages of the plaintiffs and, therefore, examining this element alone, plaintiffs have

---

[2]    The Carlisle Plan Document and the Supplement are attached to Defendants' Motion for Summary Judgment, respectively, as Exhibit A and Exhibit B.

[3]    The Plan also provides for "Early Retirement Benefits" and "Disability Retirement Benefits."  However, neither of these types of benefits is raised as an issue by plaintiffs' Complaint or cross-motion.  A participant who has five or more years of "Vesting Service" and attains age fifty (50) may elect to take an Early Retirement Benefit.  (Exhibit B, p.3, ¶(j)(2)).

not satisfied their threshold burden of demonstrating eligibility for Deferred Vested Retirement benefits.

Where a terminated Member has satisfied the vesting and eligibility requirements for a Deferred Vested Retirement benefit, §4.4(b) of the Carlisle Plan Document provides that the amount of the terminated Member's monthly benefit shall be calculated "based on the benefit rate and his Credited Service as of the date his Vesting Service terminates." (Exhibit A, p.18, §4.4(b)). Monthly deferred vested retirement benefit payments begin on the first day of the month coincident with or next following the member's sixty-fifth birthday unless the member defers such payments in accordance with the terms of the Plan. (Exhibit A, p.18, §4.4 (c)).

### d. Plan Provisions Dictating the Applicable Credited Service "Multiplier"

Calculation of retirement benefits requires the determination of two factors: (1) a Member's years of "Credited Service," and (2) the applicable "benefit rate" or "multiplier." The calculation of Normal Retirement Benefits is prescribed by §4.1(b) of the Carlisle Plan Document, which states in relevant part:

> **Amount.** The monthly amount of normal retirement benefit payable to a Member eligible therefor under (a) above shall be equal to the Member's Credited Service multiplied by the benefit rate specified in the Supplement…

(Exhibit A, p.16, §4.1(b)).

In contrast, §4.4(b) of the Carlisle Plan Document describes the method for calculating Deferred Vested Retirement Benefits and provides in relevant part as follows:

> **Amount.** A terminated Member's monthly deferred vested retirement benefit shall be an amount computed in the same manner as a normal retirement benefit, determined as set forth in section 4.1(b) above, <u>based on the benefit rate and</u>

---

[4] Under the Plan, Vested Retirement Age is attained when the member has "five years of Vesting Service and has not attained age 50." (Exhibit B, p.3, ¶(j)(4)). A member reaches Early Retirement Age when he attains "[a]ge 50 (but not age 65) and five or more years of Vesting Service." (Exhibit B, p.3, ¶(j)(2)).

<u>his Credited Service as of the date of his Vesting Service terminates</u>…

(Exhibit A, p.18, §4.4(b)(emphasis supplied)).

Credited Service is determined in accordance with §3.6 of the Carlisle Plan Document (Exhibit A, p.13, §3.6) and Paragraph (h) of the Part II Supplement (Exhibit B, p.2, ¶(h)).  In the case of a Member eligible for a "Normal Retirement Benefit Under Section 4.1(b) of the Plan," the participant's years of Credited Service are multiplied by the dollar amount specified in Paragraph (l) of the Part II Supplement, which states:

> **Amount of Normal Retirement Benefit Under Section 4.1 (b) of the Plan:** The monthly amount of <u>normal retirement benefit payable to a Member eligible therefor under section 4.1(a)</u> of the Plan and whose Vesting Service terminates on or after July 20, 2000 shall be equal to the product of the amount shown in the chart below, depending upon the date of the Member's retirement, multiplied by the total period of the Member's Credited Service.  The chart is as follows:

| Date of Retirement | Monthly Retirement Benefit Per Year of Credited Service |
| --- | --- |
| July 20, 2000 through June 30, 2001 | Twenty-nine dollars ($29.00) |
| July 20, 2001 through June 30, 2002 | Thirty dollars ($30.00) |
| On or after July 20, 2002 | Thirty-one dollars ($31.00)[5] |

(Exhibit B, p.3, ¶(l)(emphasis supplied)).

The final clause of paragraph (l) of the Part II Supplement addresses whether a member is entitled to future increases in the benefit multiplier and specifically distinguishes

---

[5] As plaintiffs note in their Complaint, the Credited Service multiplier is determined through the collective bargaining process.

between retirees receiving Normal Retirement benefits and Deferred Vested Retirement benefit recipients. This clause specifically provides that retirees receiving Normal Retirement benefits are entitled to such increases while recipients of Deferred Vested Retirement benefits are not. This clause states:

> **Increases in Retirement Benefits.** Notwithstanding the foregoing, if a Member retires on or after July 20, 2000 and before July 1, 2002 with <u>normal, early, or disability</u> benefits commencing during such interval, upon attaining each subsequent July 1 during such interval after his benefit commencement, he shall be entitled to an increased monthly benefit recomputed based on the rate as in effect on each such July 1 as shown in the above chart. <u>Such increases shall not apply to the deferred vested retirement benefits under section 4.4</u>.

(Exhibit B, p.4, ¶(l)(emphasis supplied)). Thus, as Paragraph (l) of the Part II Supplement makes clear, a Member is eligible for the next July 1 increase in the applicable service multiplier only if he "retires" with Normal, Early or Disability benefits during that year, and the Plan specifically excludes recipients of Deferred Vested Retirement Benefits from such increases.

  e. **Plan Provisions Describing the Discretion and Authority of the Plan Administrator**

    The Plan vests discretion regarding interpretation of the Plan in a Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is comprised of five members selected in accordance with procedures prescribed by the Plan. (Exhibit A, p.32, §§7.1-7.2). The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary…". (Exhibit A, p.32, §7.3). The powers and duties of the Committee include "the exclusive right, in its discretion, to make any finding of fact necessary or appropriate for any purpose under the Plan, including but not limited to the determination of the eligibility for and the amount of any benefit payable under the Plan," and "in its discretion, to

interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision."  (Exhibit A, p.32, §7.3)(d), (e)).

### III.    DISCUSSION

####    a.    Plaintiffs have failed to exhaust their administrative remedies regarding their alleged future entitlement to Deferred Vested Retirement benefits.

An ERISA beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B).  However, "except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."[6]  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002), quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990) See also Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984)); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986); Sollon v. Ohio Casualty Ins. Co., 2005 WL 2768948 *24 (W.D. Pa. Oct. 25, 2005).  "[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA]." Amato v. Bernard, 618 F.2d 559, 567 (9th

---

[6] No exception to the exhaustion requirement applies to plaintiffs' claim.  In Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986), the Third Circuit distinguished between claims to enforce the terms of a benefit plan and claims to assert rights established by the ERISA statute. 799 F.2d at 891.  Exhaustion of Plan remedies is required in the former, but not the latter, category of cases. Id.  Since Zipf, a vast majority of cases waiving the exhaustion requirement have fallen in two categories: (1) discrimination claims under section 510 of ERISA, or (2) failure to provide plaintiffs with Summary Plan Descriptions, as required by ERISA.  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 253 (3d Cir. 2002).  More recently, the Third Circuit has also recognized the possibility of waiving exhaustion in cases where statutory rights stem from the fiduciary duties set forth in section 404 of ERISA, 29 U.S.C. § 1104(a). See Harrow, 279 F.3d at 253-54.  In the present case, plaintiffs seek only to enforce their interpretation of the ERISA plan, which claim falls squarely within the scope of the claims to which the exhaustion requirement has been uniformly held to apply.

Cir.1980). Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Amato, 618 F.2d at 567. Moreover, trustees of an ERISA plan "are granted broad fiduciary rights and responsibilities under ERISA ... and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." Id.; see also Zipf, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

The rationale underlying the exhaustion requirement is particularly compelling in this case. Plaintiffs' motion for summary judgment presents matters of Plan interpretation and issues of fact that are distinctly appropriate for administrative review. Yet, plaintiffs have not even attempted to present these matters to the Committee. Plaintiffs originally claimed that, upon attaining age 65, each would be entitled to receive *Normal Retirement benefits* calculated according to the benefit multiplier *then in effect*. Now, plaintiffs contend that they will be entitled to *Deferred Vested Retirement benefits* and that application of provisions of the Plan addressing *"Years of Service," "Credited Service," and "Vesting Service"* to *their personal employment history and circumstances* carries them beyond the July 20, 2002 threshold for the $31.00 benefit multiplier. Plaintiffs' new claim bristles with issues of plan interpretation and questions of fact that the Plan documents and applicable law commit to the sound discretion of the Plan Administrator.

The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and as named fiduciary…" (Exhibit A, p.32, §7.3). The powers and duties of the Committee include "the exclusive right, in its discretion, to make any *finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan* and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, *the right to remedy or resolve possible ambiguities, inconsistencies, or omissions*, by general rule or particular decision." (Exhibit A, p.32, §7.3)(d), (e)). Thus, the Plan grants to the Committee the broadest possible discretion regarding determinations of benefits and interpretation of the Plan.

Where, as here, the plan document grants discretion and authority to the plan administrator to interpret the plan and make factual determinations regarding benefit eligibility, the Courts recognize and respect this discretion and authority by applying the arbitrary and capricious standard of review to such interpretations and determinations of fact. Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176 (3d Cir. 1991). In the present case, plaintiffs propose to circumvent the foregoing principles by having this Court take the first crack at interpreting the various plan provisions invoked in their motion and by making findings pursuant to the assertions of fact made for the first time in their affidavits. In an effort to justify this departure from settled law and policy, plaintiffs contend that defendants have invoked "post-hoc rationales" regarding the denial of their claim. This is a non sequitur. Defendants cannot have engaged in any a post-hoc rationalization to deny a claim that was never presented for review in the first instance. The only claim presented by the plaintiffs was a claim for Normal

Retirement benefits, which was invalid under the plain language of the Plan. By completely abandoning this claim in their cross-motion for summary judgment, plaintiffs implicitly acknowledge its invalidity. Whistling past the graveyard, plaintiffs simply ignore their own request for a judicial declaration of entitlement to Normal Retirement benefits calculated based upon the multiplier in effect when each reaches age sixty-five. This was the only claim ever presented to the defendants and the only claim asserted by plaintiffs in their Complaint before this Court. Plaintiffs' recently-conceived claim for Deferred Vested Retirement benefits and their proposed interpretation of the benefit calculation provisions of the Plan were never presented to the Committee and, indeed, were not raised before this Court until November 21, 2005. This new claim represents a patent failure to exhaust administrative remedies and should be dismissed.

> **b.  Plaintiffs have not made a prima facie showing of entitlement to Deferred Vested Retirement Benefits, and the Committee has not been permitted any reasonable time to investigate such a claim and interpret the plan's provisions in the context of each plaintiff's individual circumstances.**

Deferred Vested Retirement benefits are available to a participant "whose Vesting Services terminates after he attains his Vested Retirement age and before his Early Retirement Age," provided he satisfies the other requirements of the Plan. (Exhibit A, p.18, §4.4 (a)). Whether plaintiffs will be entitled to Deferred Vested Retirement Benefits cannot be determined on this record. The record does not even disclose the ages of the plaintiffs. Therefore, plaintiffs have not made a prima facie factual showing that their claim has any validity. More importantly, given that plaintiffs first asserted their entirely novel position on November 21, 2005, the Committee has had no time to gather, review and consider the employment information necessary to apply the various eligibility requirements for Deferred Vested Retirement benefits to each plaintiff or to give consideration to the issues of Plan interpretation that are attendant to

such a request. This defect in plaintiffs' claim further highlights why exhaustion of administrative remedies is so well-established in ERISA jurisprudence.

        **c.**      **Under the clear and unambiguous terms of the Plan, plaintiffs will not be entitled to receive benefits calculated based on the $31.00 benefit multiplier.**

As discussed above, plaintiffs' claim fails because they have not exhausted their administrative remedies or demonstrated, factually, an entitlement to Deferred Vested Retirement benefits. While these deficiencies preclude any relief for the plaintiffs, the record is adequate to support a declaration that plaintiffs are not entitled to the $31.00 multiplier based on the express language of the Plan. Section 4.4(b) of the Carlisle Plan Document clearly and unambiguously states that the amount of a terminated Member's monthly deferred vested retirement benefit shall be calculated "<u>based on the benefit rate and his Credited Service as of the date his Vesting Service terminates.</u>" (Exhibit A, p.18, §4.4(b)). Plaintiffs' Vesting Service terminated as early as January 11, 2002 and no later than March 16, 2002, when their WARN Act benefits expired. In either case, plaintiffs' Vesting Service terminated before the July 20, 2002 threshold for application of the $31.00 benefit multiplier.

The final clause of Paragraph (l) of the Part II Supplement also makes clear that future increases in the benefit multiplier do not accrue to current or future recipients of Deferred Vested Retirement benefits:

> **Increases in Retirement Benefits.** Notwithstanding the foregoing, if a Member retires on or after July 20, 2000 and before July 1, 2002 with <u>normal, early, or disability</u> benefits commencing during such interval, upon attaining each subsequent July 1 during such interval after his benefit commencement, he shall be entitled to an increased monthly benefit recomputed based on the rate as in effect on each such July 1 as shown in the above chart. <u>Such increases shall not apply to the deferred vested retirement benefits under section 4.4</u>.

(Exhibit B, p.4, ¶(l)(emphasis supplied)). Thus, a Member is eligible for the next July 1 increase in the applicable service multiplier only if he "retires" with Normal, Early or Disability benefits during that year. The Plan specifically excludes recipients of Deferred Vested Retirement benefits from such increases.

       Notwithstanding the foregoing, plaintiffs contend that their Vesting Service did not actually terminate when their employment terminated, but continued beyond the July 20, 2002 threshold for the $31.00 benefit multiplier. Plaintiffs posit this outcome by confusing the Plan provisions relevant to determining whether a Member has attained the five (5) years of Vesting Service necessary for *eligibility* for a Deferred Vested Retirement benefit and the provisions relevant to determining the *amount or calculation* of any such benefit. The Plan plainly provides that the benefit rate used to calculate a Member's Deferred Vested Retirement benefit is calculated as of the date the Member's Vesting Service terminates. (Exhibit A, p.18, §4.4(b)). When a Member's employment is terminated, as was the case with both plaintiffs in this action, the Member's Vesting Service ceases as of that date. This is true notwithstanding the fact that the Member may receive credit for additional Hours of Service and an additional year of Vesting Service based on accrued vacation pay and other hours that are paid but not actually worked. These additional hours may carry a Member above the 83 1/3 Hours of Service

necessary to recognize an addition year of Vesting Service for purposes of determining whether the Member has five (5) years of Vesting Service, which, in turn, may qualify the Member for some form of benefit. However, in determining the amount of a Member's benefit, the Plan unambiguously fixes the benefit rate as of "the date [the Member's] Vesting Service terminates."

In the present case, the active employment of both plaintiffs was terminated on January 11, 2002, but Motion Control continued to pay each plaintiff's wages and benefits through March 16, 2002 in lieu of WARN Act notice. Therefore, the employment of each plaintiff terminated no later than March 16, 2002. Plaintiffs assert that their Vesting Service did not terminate until after July 20, 2002 because they had more than 83 1/3 hours in 2002, which they contend entitles them to credit for one additional year of Vesting Service under §3.5 of the Carlisle Plan Document. However, §3.5 of the Carlisle Plan Document makes clear that the term "Vesting Service" as used in this provision "is used to determine … [an Employee's] *eligibility* for retirement benefits hereunder." (Exhibit A, p.12, §3.5). Similarly, §3.5 (c) of the Carlisle Plan Document, as modified by Paragraph (h) of the Plan Supplement, addresses whether a given calendar year will be counted as a year of Vesting Service; it does not address the date upon which Vesting Service terminates for purposes of calculating the benefit multiplier. This provision states:

> For employment on and after January 1, 1976, an Employee shall receive credit for <u>a year of Vesting Service for each calendar year in which he has at least 83 1/3 Hours</u> of Service. If an employee has fewer than 83 1/3 Hours of Service for any calendar year, he shall not receive credit for Vesting Service for that calendar year.

(Exhibit B, p.2, ¶(h)).

In contrast to §3.5 of the Plan, which relates to "eligibility" for benefits, §3.6 of the Plan explains that the term "Credited Service" "is used to determine *the amount of a*

*Member's benefit*."  (See Exhibit A, p.13, §3.6 and Exhibit B, pp.2-3, ¶(i)).  Subparagraph (i)(b)(3) of the Supplement provides that a participant does not receive Credited Service for an involuntary layoff that exceeds 36 months and further states that the participant does not receive Credited Service for a full calendar year for any year when the participant had less than 2,000 Hours of Service.

Based on the foregoing provisions, plaintiffs' Vesting Service terminated long before July 20, 2002, and neither plaintiff reached the level of Credited Service necessary to attain the $31.00 benefit multiplier.  Therefore, in addition to plaintiff's clear failure to exhaust administrative remedies under the Plan and their improper request that the Court usurp the authority and discretion of the Committee in matters of Plan interpretation and determinations of benefit eligibility, plaintiffs' claim also fails as a matter of law based upon the terms of the Plan itself.

## IV.    CONCLUSION

For the reasons discussed above, plaintiffs' claims fail as a matter of law and defendants are entitled to the entry of summary judgment dismissing plaintiffs' complaint and declaring that (1) plaintiffs are not entitled to receive Normal Retirement benefits as requested in their Complaint for declaratory relief, (2) plaintiffs' claim for Deferred Vested Retirement benefits is barred as a result of their failure to exhaust their administrative remedies, (3) plaintiffs' claim that any Deferred Vested Retirement benefits to which they may be entitled in the future should be calculated according to the $31.00 benefit multiplier is barred as a result of their failure to exhaust their administrative remedies, and (4), in the alternative, to the extent plaintiffs may be entitled to receive Deferred Vested Retirement Benefits in the future, such benefits must be calculated according to the $30.00 multiplier specified by the Plan.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KNOX McLAUGHLIN GORNALL & SENNETT, P.C. |
| DATE: December 8, 2005 | By: /s/ Richard A. Lanzillo<br>Richard A. Lanzillo<br>PA53811<br>120 West Tenth Street<br>Erie, PA  16501-1461<br>Telephone: (814) 459-2800<br>Fax: (814) 453-4530<br>Email:  rlanzill@kmgslaw.com<br><br>Attorneys for Defendants, Motion Control Industries, Division of Carlisle Corporation, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation |

# 641178